May it please the Court, Charles Scarborough, Department of Justice for the Attorney General. The district court in this case- But I've seen you before. Haven't you been before me before? I believe I have, Your Honor. Okay. Welcome back. Thank you. The district court in this case abused its discretion by concluding that the government's defense of the Child Pornography Prevention Act against the facial First Amendment challenge was not substantially justified and awarding attorneys' fees under the Equal Access to Justice Act. As this Court has recognized in the League of Women Voters case, the executive branch has a solemn duty to defend acts of Congress, and the defense of statutes will almost always be substantially justified under the EJUPT. The United States Supreme Court, which has the last word, no one gets to criticize their content, and, you know, that's their position in the structure of things, seemed to think that this case was very clear and that the act was clearly unconstitutional. And Judge Alsop seemed to rely upon that. What's wrong with that as a sort of beginning point of analysis? Well, Your Honor, there's nothing wrong with that as a beginning point of analysis. By very definition, in an EJUPT case where you're talking about awarding fees and you're talking about substantial justification, the government will have lost on the merits. The Supreme Court decision was 7-2 or 6-3, depending upon how you count it. What we think makes this a very simple case is that leading up to the Supreme Court's decision, four courts of appeals, one judge on this court, the district court judge in this very case, all found a way to hold the Child Pornography Prevention Act constitutional. And this one was a very simple case. Absolutely, Your Honor. And ultimately, it doesn't — it's not a nose-counting exercise. EJU makes that very clear. But you said one, so I just — I don't mean to sell myself short, but I also don't want to overplay my hand, Your Honor. The point is that this is a very simple case and that there needs to be substantial breathing room for the government in the exercise of its duty to defend the constitutionality of statutes between — On that point, counsel, let's pretend that there hadn't been any decisions anywhere. The suit brought, you're asked to defend. Is there some point where you can say, oh, my God, this case, this statute's unconstitutional. We can't do that. Absolutely, Your Honor. There are cases, and the government does, in fact, decline to defend the constitutionality of statutes. They are extraordinary cases in the vast run of cases that the courts say, you know, in exceptional circumstances. You know, that's the type of case, you know, some sort of patently discriminatory thing. In the First Amendment area, where you're talking about principles that intersect and are very difficult to discern sometimes and you're asking for an extension of a principle or you're asking for a narrowing construction of the statute, as was one of the principle issues in this case, there needs to be a fair amount of breathing room for the government to properly exercise its duty to defend the constitutionality. I think this is best exemplified by this Court's decision in Bay Area Peace Navy, in which the Court found that the government's defense of the security perimeter that was keeping protesters at bay during a fleet week celebration by the Navy was unconstitutional under the First Amendment, but then in the very next section said, you know what, the government's defense here was perfectly reasonable. This case is even better for the government than Bay Area Peace Navy because not only did you have difficult constitutional questions, you had four courts of appeals ruling in the government's favor. So it really does fall into a relatively simple category. It's not one of these hard cases where we're sort of at the beginning and you don't have judges on record as saying the statute is constitutional. And that's really the sum of the government's argument. And I don't think the Court needs to go any further to find that the district court abused its discretion in concluding that the government's defense here was not    unconstitutional under the First Amendment. Thank you. Well, let's hear from the other side. You've got plenty of time to rebut if they say something you disagree with. Thank you, Your Honor. Good to have you back. Mr. Zirkin. If it pleases the Court, my name is H. Lewis Zirkin and I represent the Appalese. How is it that all of these First Amendment cases come out of Cincinnati? I don't know, Your Honor. That's what gave me my training. What is it about Cincinnati? It's my training background. If I were a major leaguer, I'd be playing for the Reds or the Dodgers as a result of my minor league play. Go right ahead. I think the Supreme Court clearly, I think it's important to realize that this case was a facial challenge. It was not like the four cases that appeared before the four circuit courts of appeal, which were criminal cases in which the courts exercised and they struggled with the statute on a facial basis. But it would not have affected the outcome of those four particular cases because, number one, there was a severability clause in this statute, and secondly there was no question that that was real child pornography in those particular cases. I think that the Supreme Court clearly and very early in its remarks in the Ashcroft decision clearly answers the case that this was not, the position of the government was not a substantially justifiable position. This case provides a textbook example of why we permit facial challenges to statutes that burden expression. And unlike the Navy Pier case, which was as applied, this was a facial challenge. In fact, exactly what Congress passed is exactly opposed to what the Supreme Court had said when wanting to convey the message that there may be minors engaged in sexual activity for artistic reasons. The answer is, is to use a young-looking adult who appears to be a youth or a minor. And that's exactly then Congress went completely against that and said, you know, they ignored it. And they put that provision in, appears to be a minor. The other interesting thing is, is that by the time this case went to the Supreme Court and it was argued before the Supreme Court, apparently the government had abandoned any argument on the phrase that dealt with which conveys the message or the impression that there's a minor engaged because they really gave, at least to the Supreme Court, no justifications as to that particular issue. I think the district court made an appropriate analysis and applied the law exactly. I think the legal conclusion is supported. And it was not an erroneous finding of fact. And I think that with the standard of abusive discretion, this court ought to uphold his award of attorney fees in this particular case. Well, you start out with one premise, I think, that you don't use hindsight in these cases. I understand that you don't use hindsight in these cases. But the question that comes up is exactly what the government did in League of Women Voters. The government filed it in the attorney general's office because that also involved, you know, broadcasting or taking particular political positions. The government filed an answer and then abandoned the case and didn't go forward. And what happened was, as a result of that, Congress took the message and they amended the statute. And I think that's what could have happened here. There's clearly no justification for the position taken by the government as it related to the overbreadth argument. It clearly, the law was clearly unconstitutional and facially overbroad. Was this the first piece of litigation, the one that came up through the Ninth Circuit and resulted in one of our rare affirmances? That's right. It was one of the four that session. Was this the first time that there had been a facial challenge to the appears-to-be-a-minor provision of the law? Yes. This was the first. Well, it was the first clearly facial challenge that was not related to a criminal case. There had been, I think, Hilton. The interesting thing is, is the district court in Hilton had found the statute to be constitutionally overbroad and vague and did not sever and dismiss criminal charges. That went up to an appeal, and I believe that's the First Circuit, was, you know, I think one of the earliest cases that then reversed the district court and said that the statute was constitutional, although, as Judge Alsup said, you know, in making the determination on the attorney fees, said that each of the circuit courts struggled with the issue. Everybody acknowledged that there was overbreadth problems in the language of the statute. But we were the first facial challenge, and I believe that went on a civil declaratory judgment and asked for an injunctive relief, and I think the only one that was filed. What do you make of the fact that at least three of our colleagues looked at this issue and thought that the statute was not overbroad? Are you talking about in the Ninth Circuit? Yes, I am. There were only two in the – there was the district court and Judge Ferguson. And I think that Judge Ferguson – Was a published dissent from failure to go and bank joined by a – There were two. Actually, there were two judges. That's correct. There were two judges that joined in the en bas, you know, that should have been granted en bas, but I think really, at least as to Judge Ferguson, he wanted to create a new exception to the First Amendment. He wanted it not only to cover, you know, excluded from protection of the First Amendment is obscenity, child pornography, and libel and slander, and fighting words. He wanted to carve in another exception, which would be, you know, appears to be a minor in this particular language. Again, what Judge Ferguson also did is what the struggle that went on is everybody that talked about the case wanted to construe it in place in at least to the images that would appear on the Internet or that could be computerized virtually indistinguishable. But that's not what the language of the statute said. It clearly was not the language. And, you know, even the Supreme Court, Justices Scalia and Rehnquist, you know, struggled with the over-breath. Justice O'Connor didn't struggle with the over-breath as to the appears to be and certainly conveys the impression. And I believe that in this particular situation, such as in the League of Women Judges, the only reasonable position of the government should have been to take the matter back and suggest to Congress that there's a problem with it and allow them to amend it. I believe that the district court was correct, did not abuse its discretion, and this Court ought to uphold the award of attorney fees. Thank you, unless there's some questions. Roberts. I don't see any. Thank you, counsel. Thank you for your argument. Mr. Scarborough. What this boils down to, I think, is that affirming the district court's award of fees in this case would amount to a declaration that the only correct course of action that the government could have taken at the outset was to abandon the defense of the CPPA against any form of challenge, facial or otherwise. I want to talk to you. Counsel, there is an intermediate position. After the decision from our court, you didn't need to pursue. I'm sorry, Your Honor. After the Ninth Circuit. You could have chosen after the Ninth Circuit ruled. You could have chosen to stop there. Absolutely, Your Honor. And once again, we're talking about hindsight. We thought we were going to win in the Supreme Court. At that point, at the Ninth Circuit, after the Ninth Circuit ruled, I believe we had two decisions in our favor in the Ninth Circuit against us. Then we got two more decisions in our favor. So we had a clear circuit conflict. We had reasonable minds disagreeing. And the notion that sort of in hindsight we're going to say that it was unreasonable to pursue, you know, relief in the Supreme Court, we ultimately lost. We're not here to relitigate the merits, but there needs to be room for the government to take those positions. What about counsel's argument that this case was the first one that came up, pure facial challenge? Well, Your Honor, I don't actually believe that's true. In the criminal, the other cases were all criminal cases. But as I think even counsel noted, the Hilton case, the very first one in the First Circuit, involved a facial challenge. The district court invalidated the statute facial overbreadth grounds. There were facial challenges involved in all of those cases. The general arguments that were being made there and were being accepted by the courts of appeals as to the government's compelling interest in regulating virtual child pornography and the bad effects that it has on actual children, these were the arguments that were being accepted by those courts of appeals and were later rejected by the Supreme Court, by a majority of the Supreme Court. Of course, Justice Scalia and Justice Rehnquist would have gone the other way by narrowly construing the statute. The government, in essence, needs to be in here on these difficult First Amendment questions, taking one side, explaining how the statute can be narrowly construed. And to construe the aegis to allow an award of attorney's fees to say that the government's position is not substantially justified when it gets in there and tries to exercise its obligation to defend the statute would really unnecessarily chill the government. It wouldn't be good for the courts either. You would hear only one side of the issue on these questions. Okay. Thank you for your argument. I see no other questions. Thank you both for your arguments. Another very interesting case. The case just argued will be submitted for decision, and the Court will stand in recess for the day. I've got some hazards to navigation back here. Okay. I'm watching. Okay. There's rare occasions when there's no disagreement on what the law is. Okay.
judges: Lay, B. Fletcher, Hawkins